## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

LINDA FRENCH AND ANN                                        CIVIL ACTION
FRENCH GONSALVES

VERSUS

DADE BEHRING LIFE INSURANCE                                 NO. 09-394-C-M2
PLAN

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, March 23, 2010.

MAGISTRATE JUDGE CHRISTINE NOLAND

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

LINDA FRENCH AND ANN                                    CIVIL ACTION
FRENCH GONSALVES

VERSUS

DADE BEHRING LIFE INSURANCE                            NO. 09-394-C-M2
PLAN

<u>MAGISTRATE JUDGE'S REPORT</u>

This matter is before the Court on the Motion to Dismiss, or Alternatively, to Transfer

this Action to the United States District Court for the Northern District of Illinois (R. Doc.

4) filed by defendant, Dade Behring Life Insurance Plan ("the Plan").  Plaintiffs, Linda

French and Ann French Gonsalves (collectively "plaintiffs"), have filed an opposition (R.

Doc. 13) to the Plan's motion.  Both parties have also filed reply memoranda.  (R. Docs.

21 and 24.)

<u>FACTS & PROCEDURAL BACKGROUND</u>

The plaintiffs are two (2) sisters who are the named beneficiaries of an optional life

insurance policy provided to their brother, Martin French, through an ERISA plan sponsored

by his former employer, Dade Behring, Inc. ("Dade Behring").[1][2]  The plaintiffs brought the

present action to obtain additional benefits under that optional policy from the Plan.

According to the plaintiffs, following Martin French's death, the Plan initially confirmed that

---

[1] The fact that the Plan at issue is one governed by the Employee Retirement Income Security Act of 1974 ("ERISA") appears to be undisputed among the parties.  The Plan provides basic and optional life insurance benefits to employees of Dade Behring.

[2] Martin French was a Regional Vice President at Dade Behring and lived in Deerfield, Illinois, while employed in that position.  He was enrolled in the Plan until his death on July 19, 2005.

they would receive optional life insurance benefits of approximately $1,600,000.00;[3] however, the Plan later claimed that Martin French had not provided the requisite evidence of insurability ("EOI") when his coverage exceeded $800,000.00.  The Plan therefore paid only $478,058.00 to the plaintiffs, and after completing the administrative appeals required by ERISA,[4] plaintiffs filed this suit seeking the remaining benefits that the Plan allegedly indicated they were owed.[5]  The benefits that the Plan did pay to the plaintiffs were mailed to them at their respective residences.  Linda French is a resident of Livingston Parish, Louisiana, which is within this judicial district, and Ann French Gonsalves, is a resident of San Diego County, California.  The principal places of business for both Dade Behring and the Plan that it sponsors are in Deerfield, Illinois, which is within the Northern District of Illinois.  The Administrative Committee, the Plan's named fiduciary responsible for reviewing benefit determinations made by the Plan's insurer, is also located in Deerfield, Illinois.  Dade Behring is now called Siemens Medical Solutions Diagnostics ("Siemens") because it was acquired by that company on November 7, 2007.

On September 4, 2009, the Plan filed the present motion, seeking to have the

---

[3] Benefits under Martin French's basic life insurance policy were paid to a different named beneficiary.

[4] Specifically, plaintiffs completed that process by appealing the insurer's decision to deny additional payments to the Plan Administrative Committee located in Deerfield, Illinois.  The Administrative Committee concurred with the insurer's decision that no additional benefits payments were owed by the Plan.

[5] Plaintiffs contend that, according to the Dade Behring Employee Benefits Handbook, which contains a Summary Plan Description ("SPD") for the Plan in question, Martin French was not required to provide an EOI because the SPD provides that those who apply for optional group term life insurance when newly hired "will not have to go through the Evidence of Insurability (EOI) process."  *See*, R. Doc. 1, p. 3, ¶9.  Plaintiffs further assert the Plan's deduction of premiums for the full amount of coverage during the last two (2) years of Martin French's life indicates that the Plan's administrators also interpreted the SPD and other documents as not requiring proof of insurability.

present suit dismissed pursuant to Fed. R. Civ. P. 12(b)(3), or alternatively, transferred to the U.S. District Court for the Northern District of Illinois pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §1404(a) on the ground that this Court is an improper venue for plaintiffs' action.  Specifically, the Plan contends that this suit should be dismissed because the Plan is not administered in this judicial district, the alleged breach did not take place in this district, and the Plan does not reside in and may not be found in this district, as required by ERISA, §502(e)(2), 29 U.S.C. §1132(e)(2).  Alternatively, the Plan asserts that this matter should be transferred because the Plan, the Plan's sponsor (Dade Behring, Martin French's employer), and all material witnesses and evidence are located in the Northern District of Illinois.  The Plan's motion was referred to the undersigned for a report and recommendation on February 18, 2010.

## LAW & ANAYLSIS

Fed. R. Civ. P. 12(b)(3) permits a defendant to move to dismiss a case for improper venue.  Fed. R. Civ. P. 12(b)(3).  If the Court determines that venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought."  28 U.S.C. §1406(a).  The ERISA venue provision provides that an action "may be brought [1] in the district where the plan is administered, [2] where the breach took place, or [3] where a defendant resides or may be found."  29 U.S.C. §1132(e)(2).  The plaintiffs concede that the Plan at issue in this case was not administered in Louisiana but instead was administered in Illinois.  They contend, however, that venue is proper in this district under the second and third options provided in §1132(e)(2).

**I.      Is venue proper in this district?**

3

**(A)     Second venue option - Did the alleged breach occur in this district?**

Plaintiffs first contend that the Middle District of Louisiana is a proper venue for this suit because the breach occurred here, since benefits payments were mailed to and remain payable to Linda French in this district.  District courts across the country are split on the issue of where "the breach took place" for purposes of ERISA venue, and the Fifth Circuit Court of Appeals has not addressed the issue.  Some courts hold that the place where "the breach took place" is where performance was to be rendered to the participant under the plan.  *Memorial Hermann Hosp. System v. Boyd Gaming Corp. Percs Plan*, 2007 WL 624334, *2 (S.D.Tex. 2007)(citing cases).  Those courts interpret "performance" to mean where the payee was to receive payment of benefits under the plan.  *Id.*  A focus for those courts was the "perceived hardship on plan participants to have to litigate in locations distant from the participants' residences."  *Id.*  Some of those cases refer to Congress' expression of intent in enacting ERISA to provide broad enforcement remedies, to which the plaintiffs also cite in the present case.  *Id.*  Other district courts have held that a claim for nonpayment of benefits allegedly due under an ERISA plan arises where the plan makes the challenged decision (*i.e.*, the decision to deny payment of a claim).  *Id.*, at *3 (citing cases).  The logic underlying those cases is that the breach of the plan (*i.e.*, the "wrong") is the decision to refuse payment, which is distinct from the "injury" or "damages" arising from the breach.  *Id.*  In those cases, the breach was held to have occurred where the defendant plan made the challenged decision, while the injury or damage occurred in the plan participant's home district.  *Id.*

While not yet addressed by the Fifth Circuit, several district courts within this circuit have   either   held   or   assumed   that   ERISA   venue   is   proper   where   a   plan

4

participant/beneficiary receives or was to receive payments.  For example, the Southern District of Texas, in *Memorial Hermann Hosp. System,* made that assumption.  *Id.*, at *4.[6] That district court, however, went on to hold that ERISA venue is not proper in the district where an *assignee* of a plan participant is located "[b]ecause the assignee stands in the shoes of the assignor, [and] the assignee accepts the assignor's location for venue purposes."  *Id.*  The court noted that the assignee "may pursue only whatever rights [the assignor] enjoyed under the terms of the plan" and explained that there was no authority for the proposition that, merely by taking an assignment of contract rights to payment, an assignee is given the power to alter the location where suit may be brought under the contract in the absence of an express contractual provision permitting such effect of an assignment.  *Id.*  Specifically, in *Memorial Hermann,* the court held that an ERISA plan participant's assignment to a health care provider of the right to claim compensation for approved health care services does not alter, in the absence of an express ERISA plan term mandating a change, the location of proper venue under ERISA §1132(e)(2) from the place(s) venue would have existed had no assignment occurred.  *Id.*[7]  The court found that

---

[6] *See also, Wallace v. American Petrofina, Inc.*, 659 F.Supp. 829 (E.D.Tex. 1987)(holding that venue in an ERISA action was proper in the district in which the breach of the benefits plan occurred, which was the district where the recipient's pension benefits were received); *Frost v. ReliOn, Inc.*, 2007 WL 670550 (N.D.Tex. 2007)(recognizing that a breach of an ERISA plan takes place where the beneficiary was to receive benefits or where the decision regarding payment was made); *Derise v. Life Ins. Co. of North America*, 1998 WL 231037 (E.D.La. 1998)(citations omitted)("Generally, the place of breach of an ERISA plan . . . is where the plaintiff receives payment of benefits or where the decision to deny benefits is made.  Plaintiff is alleged to be a resident of Iberia Parish which is where he initially received the benefits alleged to have been wrongfully terminated.  For this reason[ ], the Court will consider the Western District of Louisiana [the district encompassing Iberia Parish] to be the Court of proper venue under §1132").

[7] Other district courts, however, have held that venue is proper where an assignee would have received benefits, regardless of the participant's or beneficiary's residence.  *See, Flynn v. Veazey Constr. Corp.*, 310 F.Supp.2d 186, 192 (D.D.C. 2004)(holding venue was proper where the assignees were located because they were the real parties in interest); *Cole v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 225 F.Supp.2d 96, 98 (D.Mass. 2002)(adopting a contracts analysis and holding that venue

such approach did not "meaningfully limit a plan participant's remedies, because the result applied only where the participant had assigned the claim." *Id.* The court further found the result was warranted to protect ERISA plans from being subjected to multiple lawsuits with the potential of differing results when a plan participant is involved in a single event and requires medical treatment by different providers in different locations, each having an assignment from the participant. *Id.*

The Plan, in the present matter, relies upon *Memorial Hermann* and analogizes *beneficiaries* of plan payments (like the present plaintiffs) to *assignees* of such payments (like the health care provider in *Memorial Hermann*). The Plan argues that, since the plaintiffs are essentially assignees of the plan payments, they accept the participant's/assignor's location for purposes of ERISA venue, and because Martin French was located in the Northern District of Illinois when he was employed by Dade Behring and a participant in the Plan that Dade Behring sponsored, the Northern District of Illinois is the appropriate venue for the present action. Thus, the issue before the Court becomes whether or not *beneficiaries* of plan benefits and *assignees* of plan benefits should be treated the same for purposes of ERISA venue.

Although no cases directly addressing that issue have been located, the undersigned nevertheless finds that application of the Plan's argument to the present case would not make sense. By virtue of the type of benefits that are at issue in this case (*i.e.*, life insurance benefits that only become payable upon the plan participant's death), the

---

was proper in the state of the assignee's residence because payments became due there); *Foster G. McGaw Hosp. of Loyola Univ. of Chi. v. Pension Trust Dist. #9 Welfare Trust I.A. of M.A.W.*, 1992 WL 309571, at *4 (N.D.Ill. 1992)(finding venue where the beneficiary's assignees were located).

participant himself, Martin French, never actually received any plan payments and could not make a claim for such benefits since they were only payable upon his death.  This is unlike an ERISA health insurance or disability benefits plan where the participant is the beneficiary and receives payments while he/she is alive.  Thus, it makes no sense that the non-participant beneficiaries that Martin French designated (*i.e.*, the plaintiffs) should have to "step into his shoes" and only bring claims where Martin French resided since he did not even have the right to bring any claims to benefits there because the benefits only became payable upon his death.[8]

Furthermore, the logic underlying the decision in *Memorial Hermann* demonstrates why it would not make sense to equate beneficiaries in life insurance cases like the present one to assignees in cases involving other types of policies.  The Southern District of Texas, in *Memorial Hermann,* found it was appropriate for the assignees of a health insurance plan to be required to bring suit in the district where the participant/beneficiary resided because those assignees were various health care providers by whom the participant beneficiary had been treated in different locations and to whom the participant had assigned plan payments to cover health care expenses, which subjected the plan to the risk of multiple lawsuits with the potential of differing results.  While it is possible that a participant in a life insurance plan can designate more than one beneficiary, subjecting the plan to the possibility of suit in more than one location after the participant's death, that result seems far less likely in the life insurance beneficiary context than in the health insurance

---

[8] While ERISA expressly provides protections for beneficiaries of plan benefits and seeks to afford them "ready access to the [f]ederal courts," no similar protections and access are afforded to assignees of ERISA plan benefits, such as health care providers who are assigned health care benefits.  *See*, 29 U.S.C. §1001 ("It is hereby declared to be the policy of this chapter to protect the interests of participants in employee benefit plans and their beneficiaries . . . by providing . . . ready access to the Federal courts").

assignment context discussed above.[9] [10]   Moreover, since both of the participant's sisters in this case have filed a single suit in one of their residences, the Plan is not being subjected to multiple suits in different locations by the beneficiaries of Martin French's life insurance policy.   Accordingly, because courts have generally recognized that the district where a beneficiary receives payment of benefits constitutes an appropriate ERISA venue under the second option of §1132(e)(2) and this suit was filed in a district where plan payments were paid and allegedly remain payable to a designated beneficiary,

venue is proper in this district, and the Plan's request for dismissal should be denied.[11] [12]

---

[9] As plaintiffs explain in their sur-reply memorandum, a life insurance beneficiary should not be placed in the same category as a medical provider that is assigned benefits because beneficiaries on a life insurance policy are known parties to the life insurance contract, and a plan is aware of their existence and can expect that, if a dispute over benefits arises, the beneficiaries may file suit where the benefits are due.  In contrast, a health insurance plan may have no relationship to the various health care providers that provide treatment to a plan participant and would not know of their existence and where potential suits could be filed if health care providers were permitted to bring suit wherever they are located.  Plaintiffs summarized the issue aptly in stating that, "a beneficiary is a party to a life insurance contract, while an assignee is a stranger to a health insurance policy.  Thus, receipt of payments by a beneficiary is sufficient to establish venue, while payments to an assignee are insufficient to establish venue."  See, Plaintiffs' sur-reply memorandum, p. 4.

[10] Also, the undersigned agrees with plaintiffs' contention that life insurance claims are likely to be made with far less frequency than claims for health insurance benefits since a participant only dies once but numerous health insurance claims can be made over a lifetime (and ERISA life insurance claims are likely even more rare since individuals are typically retired and no longer participants in such plans at the time they die).  As such, the Plan's assertion that, allowing venue in the district where payments are made to a life insurance beneficiary would result in a slew of claims in different venues, carries little weight.

[11] Because the Fifth Circuit has not addressed the issue of where a breach takes place for purposes of establishing venue under §1132(e)(2), the Plan relies upon several district court cases from within the Fifth Circuit, including *Brown Schools, Inc. v. Florida Power Corp.*, 806 F.Supp. 146 (W.D.Tex. 1992) and *Orgeron v. Moran Towing Corp.*m 1994 WL 462995 (E.D.La. 1994), which discuss that issue. Those cases, however, appear to actually support the plaintiffs' position and the undersigned's decision

_____

herein.  In *Brown*, the Western District of Texas specifically addressed where an alleged breach may be deemed to have occurred for ERISA purposes.  The court distinguished those alleged "breaches involving payments which have been made to a beneficiary within the district and then ceased" from those alleged "breaches in which payments were simply denied and never received within the district" in question, such that no transactions took place at all within the district.  The court noted that, generally, the place of breach of an ERISA plan is where the recipient of benefits "actually acquires his due (*i.e.*, receives payment of benefits) or where the decision to deny benefits is made."  *Id.*, at 149.  In *Orgeron*, the Eastern District of Louisiana applied the distinction contained in *Brown* and found that, because the beneficiary of a long-term disability benefit plan never received any benefits in Louisiana or elsewhere, and the decision to deny benefits was made in either Connecticut or New York, where the plan was administered, the breach did not occur in Louisiana and venue was improper there, resulting in the suit's dismissal.  Applying the distinction recognized in *Brown* to the present case, however, the undersigned reaches a different result than that rendered in *Orgeron.*  As discussed above, the beneficiaries of the life insurance payments at issue in this case actually received some benefits at their residences in Louisiana and California, and then the Plan denied their request for additional benefits.  As such, the place of breach in this case can be considered to have occurred in three (3) different locations:  the Middle District of Louisiana and San Diego County, California (where each of the plaintiffs received benefit payments) and the Northern District of Illinois (where the decision to deny additional benefits was made).  Accordingly, venue is proper in this district under the second prong of §1132(e)(2).

[12] The undersigned also concurs with the reasoning recently set forth by the Northern District of New York, in *Barnum v. Mosca*, 2009 WL 982579 (N.D.N.Y. 2009), that both principles of statutory construction and the legislative history pertaining to the ERISA venue statute support construing the statute to mean that the place of breach can be the situs where benefits were received.  In *Barnum*, the U.S. District Court for the Northern District of New York explained that, as a matter of statutory construction, the phrase "place of breach" should not be interpreted solely as the place where the plan is processed:

> "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant'."  *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001)(quoting *Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)).  If this Court were to hold that the place of breach is at the location of the decision making or processing of the Plan, it would render a portion of §1132(e)(2) "superfluous, void, or insignificant;" specifically, the provision for establishing jurisdiction "where the plan is administered."  *See*, *Cole*, 225 F.Supp.2d at 98 ("If the place of breach were the place where benefits were denied, the place of breach would always be the place where the plan is administered.  This would make the first two venue options in §1132(e)(2) coextensive").

*Id.*, at *3.  The Northern District of New York also explained that the legislative history pertaining to the ERISA venue statute provides additional support for construing the statute to mean that the place of breach occurs at the situs where benefits were received.  The intent of Congress was to give plaintiffs in ERISA actions "ready access to the Federal courts."  29 U.S.C. §1001(b).  Courts have recognized that intention, finding that the 'wide choice of venue and nationwide service of process reflects the broader purpose of Congress to liberalize procedural rules in ERISA cases . . ."  *Id.*, quoting *Ward v. Maloney*, 2003 WL 1562424, *1 (M.D.N.C. 2003).  It was with that congressional intent in mind that the Northern District of New York faced the defendant's venue challenge.  *Id.*, at *4.  Finally, the court noted that further support for holding that the place of breach is the place where benefits were received was found in the fact that a breach of a term of the ERISA plan was akin to a breach of contract claim, which occurs where the

**(B)    Third venue option - Does the Plan reside in or can it be found in this district?**

Since venue is proper in this district under the second prong of the ERISA venue statute, the undersigned need not address whether venue exists in this district under the third option in that statute.  *Barnum v. Mosca*, 2009 WL 982579 (N.D.N.Y. 2009)("Section 1132(e)(2) requires that only one of the [three] means must be satisfied for venue to be proper within a particular district.  29 U.S.C. §1132(e)(2).  Because the Court concludes, as a matter of law, that the alleged breach took place within this District, where the Plaintiff traditionally receives his benefits, it is not necessary to inquire further as to the viability of venue through where the Defendants 'may be found'").

**II.    Should this matter be transferred to the Northern District of Illinois?**

---

contract is to be performed – in an ERISA case, where the plaintiff was to receive benefits.  In light of those findings, the Northern District of New York concluded that venue was proper under §1132(e)(2) where the plaintiff/beneficiary resided and would have received benefits.  *Id.*

    *See also, Wallace v. American Petrofina, Inc.*, 659 F.Supp. 829, 832 (E.D.Tex. 1987)("'Congress intended to open the federal forums to ERISA claims to the fullest extent possible.'  This intent appears to be the exception to the rule that 'in most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place for trial'").  Because Congress intended the ERISA venue provision to be broad so participants and beneficiaries could advance their claims, the "location of the breach" prong of §1132(e)(2) (the second prong) should not be read as being identical to the "place where the plan was administered" prong (the first prong) since that would eliminate a potential venue option for participants/beneficiaries.  As plaintiffs explain in their opposition, the elimination of the second venue option (by making it coextensive with the first) would often result in depriving ERISA beneficiaries of the ability to sue for their health, disability, and life insurance benefits where they live and work since, in today's economy, many individuals are employed by national and international companies that administer plans in locations far removed from the residential locations of their employees.  *See also, Schoemann ex rel. Schoemann v. Excellus Health Plan, Inc.*, 447 F.Supp.2d 1000 (D.Minn. 2006)(rejecting the argument that, for purposes of ERISA venue, a breach takes place where the decision to deny coverage is made because "it is hard to believe that Congress intended that the ERISA venue provision be skewed so heavily in favor of defendants and so heavily against beneficiaries"); 14D Fed. Prac. & Proc. Juris. §3825 (3d ed.)(recognizing that "the better view" concerning the ERISA venue provision, which is supported by contract law, is that the breach took place where the payment was to be received).

10

Since the undersigned has determined that this suit was properly filed in this district, the next issue to consider is the Plan's alternative argument that this matter should be transferred to the Northern District of Illinois[13] in the interest of justice and for the convenience of the parties.  Pursuant to 28 U.S.C. §1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. §1404(a).  "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D.Tex. 2002).  Nevertheless, a court may not transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other.  *Southwest Airlines Co. Profit Sharing 401(k) Committee ex rel Southwest*, 2007 WL 268808, *1 (N.D.Tex. 2007).  Instead, "[t]he burden rests on the defendant to prove by a preponderance of the evidence that a plaintiff's choice of forum should be disturbed and transfer is appropriate based on a balancing of relevant factors."  *Id.*, quoting *Mannatech, Inc. v. K.Y.C., Inc.*, 2006 WL 2216033, at *2 (N.D.Tex. 2006) and citing *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989).  Thus, unless the balance of factors strongly favors transfer to the Northern District of Illinois, the plaintiffs' choice of forum in this district should remain intact.  *Southwest Airlines,* at *1; *TIG Ins. Co. v. NAFCO Ins. Co., Ltd.*, 177 F.Supp.2d 561, 569 (N.D.Tex. 2001).

In determining whether transfer is appropriate, the undersigned is to consider "a

---

[13] Under the various prongs of §1132(e)(2), this suit could also have been brought in the Northern District of Illinois since the Plan is administered there and "resides" or "may be found" there.

11

number of private and public interest factors, none of which are given dispositive weight."

*In re Volkswagen*, at 203 (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337,

340 (5th Cir. 2004).   Among the factors that the Court may consider are the following: (1)

the convenience of the parties; (2) the convenience of material witnesses; (3) the

availability of process to compel the presence of unwilling witnesses; (4) the cost of

obtaining the presence of witnesses; (5) the relative ease of access to sources of proof; (6)

calendar congestion; (7) where the events in issue took place; and (8) the interests of

justice in general.   *Gundle Lining Const. v. Fireman's Fund Ins.*, 844 F.Supp. 1163, 1165

(S.D.Tex. 1994).

> **(A)   Convenience of the parties:**

As an initial matter, the Plan notes that this factor is "of little concern" because,

typically, ERISA cases are "resolved on the papers" contained in the administrative record

(often by summary judgment procedure), and without the need for any discovery or trial.

The Plan nevertheless argues that this case should be transferred to the Northern District

of Illinois because the only party that resides in this district is plaintiff, Linda French, and

because litigating this case in Illinois would be no more inconvenient to the other plaintiff,

Ann French Gonsalves, than litigating it in Louisiana.   The Plan further argues that litigating

the case in Louisiana would be "more of a distraction" to it than litigating in Illinois would

be to the plaintiffs since distant litigation would "interfere[] with plan administration and tax[]

the Plan's limited resources, to the detriment of all plan participants, because the Plan must

engage and monitor distant counsel, and if necessary, present its witnesses and evidence

in a distant courtroom."   According to the Plan, because of the "unlikelihood of discovery

or trial" in this ERISA matter, plaintiffs are not likely to be any more inconvenienced

proceeding in Illinois.

The Court finds, however, that, if it were to accept the Plan's argument, it would be violating the rule that transfer should not occur where the result is merely to shift inconvenience of venue from one party to another.[14]  As plaintiffs note in their opposition, litigating this case in Illinois, instead of Louisiana, would have detrimental consequences for Linda French, in that she is a working parent who has child care responsibilities that would be burdened if this matter is transferred to the Northern District of Illinois. Considering that the plaintiff's choice of forum is favored and that transfer to Illinois would simply shift the inconvenience from one party to another, the undersigned finds that this factor weighs against transfer.

**(B)    Convenience of material witnesses:**[15]

Although the Plan again notes that deposition and trial testimony are unusual in an ERISA case since such cases are typically resolved solely on the administrative record, it nevertheless contends that, in the event evidence outside the administrative record is needed in this matter, such evidence would involve testimony by members of the

---

[14] In *Sanders v. State Street Bank and Trust Co.*, the Southern District of Texas faced a similar argument by the defendant that litigating a case in Texas, instead of Boston, would be expensive and disrupt its business.  The court rejected the defendant's argument on the ground that it would not transfer a case "where the only practical effect is a shifting of inconveniences" from one party to another.  The court noted that, if it were to transfer the case from the plaintiffs' chosen home forum, the "cost and burden to the Plaintiffs would be excruciating."  It further explained that, while, in total dollars, the cost to the defendant of trying the case in Texas would quite likely be in excess of the cost to the plaintiffs trying it somewhere else, "in relation to the means possessed by the respective parties, a transfer would be far more burdensome on the[ ] plaintiffs th[a]n retaining the case [would] be on [the defendant]."  *Sanders v. State Street Bank and Trust Co.*, 813 F.Supp. 529, 535 (S.D.Tex. 1993).

[15] "The availability and convenience of witnesses has been held to be the most significant factor in deciding a §1404(a) motion to transfer."  *Mannatech*, at *3.  In order to justify transfer on that basis, however, a party must specifically identify the key witnesses that will be called to testify and describe the general content of their testimony.  *Boggess v. Texas Mut. Ins. Co.*, 2007 WL 1053332, at *2 (N.D.Tex. 2007).

Administrative Committee as to their grounds for denying plaintiffs' appeal and testimony by the Dade Behring employees responsible for providing Martin French with the life insurance policy at issue.  The Plan argues that, since all of those witnesses are located in the Northern District of Illinois, the case should be transferred to that district for their convenience.  The Plan further notes that plaintiffs are unlikely to call any witnesses of their own and cannot themselves testify to any information concerning the Administrative Committee's denial of their appeal or their brother's efforts to obtain supplemental life insurance; as such, their case will consist primarily of cross-examining defendant's witnesses.

The plaintiffs, however, argue that, because the members of the Administrative Committee and other employees who were responsible for providing Martin French with life insurance are "presumably still employed by Siemens, which acquired Dade Behring," their convenience is entitled to less weight because their employer will be able to produce them at trial without the necessity of compulsory process.  *See*, Plaintiff's opposition, p. 18, citing *Sanders v. State Street Bank and Trust*, 813 F.Supp. 529 (S.D.Tex. 1993)(Where key witnesses are employees of the party seeking transfer, their convenience is entitled to less weight because that party will be able to compel their testimony at trial).  The plaintiffs also argue that, contrary to the Plan's assertion, no testimony will be necessary from Administrative Committee members concerning their reasons for denying the plaintiffs' appeal since Federal Regulations require that both notifications of benefit determinations and reviews of those determinations "shall set forth . . . the specific reason or reasons for the adverse determination."  Plaintiffs contend that, if the Administrative Committee did not provide specific reasons for the denial in writing, it should not be permitted to do so now

14

through oral testimony and to "bootstrap its own deficiencies into grounds for a change of venue."  Additionally, with respect to the Plan's contention that those Dade Behring employees who were responsible for providing Martin French with the life insurance policy at issue are material witnesses, plaintiffs correctly assert that the Plan has failed to sufficiently describe those witnesses' testimony and has failed to show that the administrative records "will not be, or are not likely to be, conclusive on the question" such that oral testimony will be needed from those witnesses.  *See*, Plaintiffs' opposition, p. 19, citing *Board of Trustees, Sheet Metal Workers' National Fund v. Baylor Heating and Air Conditioning*, 702 F.Supp. 1253, 1259 (E.D.Va. 1988).[16]

Finally and most significantly, plaintiffs note that most of the activity concerning this matter did not actually occur in Illinois, but instead appears to have occurred in Maitland, Florida, where the Plan's claims administrator, Hartford, is located.  For example, the letter which denied the plaintiffs' claim to additional benefits was sent from Hartford's office in Florida and specifically instructed the plaintiffs to address any appeal to Hartford's Florida

---

[16] Witness convenience cannot be assessed without reliable information identifying the witnesses involved and specifically describing their testimony.  *Id.,* at 1258, citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 258-59, 102 S.Ct. 252, 267, 70 L.Ed.2d 419 (1981)(among other cases).  That type of particularized information, which is usually submitted in affidavit form, is necessary to enable the court to ascertain how much weight should be given to a claim of inconvenience.  *Id.*  For example, inconvenience to a witness whose testimony is cumulative is not entitled to great weight; in contrast, greater weight is given to inconvenience of a witness whose testimony is central to a claim and whose credibility is also likely to be an important issue (since, where witness credibility is not an issue, the use of depositions is an acceptable means of presenting testimony at trial).  *Id.*  Conclusory statements about witnesses located in a particular venue, similar to those made by the Plan in the present case, are "wholly inadequate" to establish witness inconvenience justifying transfer.  *Id.*  Instead, the movant advocating transfer must provide a detailed description of the witnesses' proposed testimony and demonstrate that such testimony will be probative.  *Id.*; *Fossil, Inc. v. Knicks Mend-Rite Co.,* 1998 WL 158674, *5 (N.D.Tex. 1998).  The movant must persuade the court that the record evidence "will not be, or [is] not likely to be, conclusive" on the issues in the case.  *Board of Trustees*, at 1259.  The Plan has not presented any affidavits or other evidence specifically providing a detailed description of the alleged material witnesses' proposed testimony and has not demonstrated that such testimony is necessary because the documents in the administrative record will not be conclusive on the issues in this matter.

office, which they did.  *See*, Exhibit 1 to plaintiffs' opposition, Attachment A.  The denial of plaintiffs' appeal was also sent from Hartford's Florida office.  *Id.*, Attachment D.  Only the plaintiffs' final appeal was directed to Dade Behring's Administrative Committee and took place in Illinois.  *Id.*, Attachment F.  The Administrative Committee's letter dated July 24, 2006 suggests that most of the processing of plaintiffs' claim for benefits occurred in Florida, rather than in Illinois.  *Id.*, Attachment F (noting that the Administrative Committee's review was limited to "ensuring that The Hartford followed proper procedures and considered all relevant information in making its determination under the terms of the Plan's contract of insurance;" that the Committee found that The Hartford "acted appropriately in limiting its payment to the $800,000 maximum payable under the Plan;" and that The Hartford "acted in accordance with the terms of the plan limiting insurance in circumstances where proof of insurability is required but not submitted when it denied [plaintiffs'] request for additional payment").

Considering such evidence presented by the plaintiffs, which has not been addressed or refuted in any way by the Plan, it appears that the witnesses who could testify regarding the denial and initial appeal of plaintiffs' claim for benefits are actually located in Florida, instead of Illinois.  Furthermore, the Plan has not specifically demonstrated that the Administrative Committee members and employees of Dade Behring who could be potential witnesses in this case are no longer employed with the Plan or Dade Behring, and if they are no longer employed, that those witnesses would be unable or unwilling to attend the trial in Louisiana.  Additionally, even if those witnesses absolutely could not attend the trial in Louisiana, the Plan would not be unreasonably harmed since their testimony could

be presented via deposition.[17]   As such, transfer of this case to Illinois would not necessarily make this suit more convenient to material witnesses, and this factor therefore also weighs against transfer.[18]

>    **(C)    The cost of obtaining the presence of witnesses:**

Concerning this factor, the Plan argues that, since all material witnesses in this case (the Administrative Committee and possibly former or current Dade Behring employees) reside in the Northern District of Illinois, both parties "would incur exorbitant travel and lodging costs if they had to bring witnesses to testify in Louisiana."  The Plan also notes "its understanding" that Linda French's parents reside in Illinois, that she has visited them on occasion over the past few years, and that, in the event a trial was to occur in Illinois, her lodging expenses would be minimal.

The plaintiffs respond that this factor should be given little weight because ERISA suits are typically resolved on the administrative record.  They further argue that, since the only witnesses mentioned by the Plan are employees of the Plan or related entities, the cost of producing those witnesses could easily be born by the Plan.  Finally, the plaintiffs

---

[17] *See, Sanders v. State Street Bank and Trust Co.*, 813 F.Supp. 529 (S.D.Tex. 1993)(where the court found that the efficacy of the defendant's argument concerning the convenience of key witnesses was weakened by the fact that four of the six individuals named by the defendant as potential witnesses were still employees of the defendant.  The defendant's arguments were further weakened by the fact that the defendant did not claim that the two potential witnesses who were no longer employees would not be able to attend the trial under any circumstances.  The defendant simply asserted that it was conceivable those former employees would not attend.  The court noted that, even if those former employees absolutely could or would not attend the trial, the defendant would not be "unreasonably harmed" because the court liberally allowed for the use of deposition testimony at trial).

[18] *See, Boggess v. Texas Mut. Ins. Co.*, 2007 WL 1053332 (N.D.Tex. 2007)("The Court need not determine whether discovery might reveal disputed material facts that would preclude summary judgment and thus require the participation of material witnesses in matters before the Court.  Since [d]efendant [ ] has not met her burden to show how the material non-party witnesses would be inconvenienced, should the Court require their participation, this factor does not weigh in favor of transfer").

point out that, "in the unlikely event that there would be a trial in Louisiana," testimony could be procured by deposition.

Considering both parties' arguments, the undersigned finds that this factor is, at best, neutral.  It is true that holding a trial in this matter in Illinois would be more convenient and less costly for some witnesses, such as current employees of the Plan and Dade Behring.  However, since there is a strong possibility that (1) this matter will be resolved solely on the administrative record without the necessity of calling any witnesses, (2) testimony of witnesses could be presented by deposition if needed, and/or (3) at least some key witnesses are located in Florida and would have to travel from Florida to Illinois for the trial in any event, this factor does not necessarily favor transfer to Illinois.

     **(D)**     **Relative ease of access to proof:**

The Plan argues that nearly all of the relevant documents and records that will be at issue in this case (employee records, life insurance forms, relevant medical forms and communications regarding the denial of additional benefits) are located at the Plan's offices in the Northern District of Illinois.  Plaintiffs, however, point out that the Vice President of Compensation Benefits & HRIS for Siemens actually wrote to their counsel and confirmed that the plaintiffs have all documents that are in the administrative record.  *See*, Exhibit 6 to plaintiffs' opposition, Letter dated August 19, 2009 ("Your clients are in receipt of the full administrative record and all relevant plan documents.  However, in the interest of assuring you that there are not any additional relevant documents to which you do not have access, I am enclosing the following . . .").  As such, plaintiffs contend that it is likely they already have in their possession in Louisiana all admissible documents that would be used to resolve this matter.  Furthermore, both parties admit that technological advances, such as

18

scanning and email, have greatly reduced the importance of this factor in the court's analysis. *Southwest Airlines*, at *2; *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 778 (E.D.Tex. 2000). Plaintiffs have represented to the Court that the administrative record in this matter is "no more than a few inches thick." Thus, even if the Plan was required to transport those documents to Louisiana, the expense and burden of transporting them appears to be minimal, and the Plan has not adduced any competent evidence regarding the expense and burden of transporting such documents. *Southwest Airlines*, at *2.[19] Additionally, plaintiffs again note that most of the processing and appeals procedure relating to the denial of benefits in question actually occurred in Florida; as such, many of the documents may be located there, instead of in Illinois.

Finally, although the Plan contends that all parties suffer a hardship by having this case tried in Louisiana since neither party can compel any material witnesses to appear in court in Louisiana since the witnesses are located over one hundred (100) miles away from this district, they have failed to identify a single witness who is not an employee of Dade Behring or a related entity for whom compulsory process would be needed to compel his/her appearance at trial. Further, to the extent material witnesses are located in Florida, the one hundred (100) mile compulsory process issue would not be overcome by transferring the case to Illinois. As such, the access to proof factor does not weigh in favor of transfer to Illinois.

**(E)    Where the events took place:**

---

[19] Moreover, considering that the admissibility of exhibits is determined before trial, the Plan would only need to transport from Illinois to Louisiana those relevant, noncumulative documents necessary for trial. *See, Sanders*, at 535-36.

19

Since all of the events relevant to this suit, other than the payment of benefits to plaintiffs (which occurred in Louisiana and California), took place in Illinois and Florida, this factor favors venue in Illinois over Louisiana.  However, venue in Illinois would be no more convenient to potential witnesses from Florida than venue in Louisiana.

**(F)    Calendar congestion:**

Neither of the parties addressed this factor in their briefs.  As such, the undersigned will consider the factor to be neutral for purposes of the transfer analysis.  *Boggess v. Texas Mut. Ins. Co.*, 2007 WL 1053332, at *1 (N.D.Tex. 2007)(similarly considering the calendar congestion issue to be neutral because of the parties' failure to address it in their filings).

**(G)    The interests of justice:**

With respect to this factor, the undersigned agrees with the position taken by the Southern District of Texas in *Sanders v. State Street Bank and Trust Co.*, 813 F.Supp. 529 (S.D.Tex. 1993).  In that case, the court disagreed with the defendant that Boston, where the ERISA plan in question was administered, had a greater nexus with the case than the Galveston Division of the Southern District of Texas, the plaintiff's chosen forum.  The court acknowledged the number of cases cited by the defendant where courts had transferred ERISA actions away from the plaintiff's chosen forum on the basis that the place of administration had a greater nexus; however, it could not escape the conclusion  that the court that actually had the greater nexus to the case was "the one closest to the place where the [p]laintiffs were injured, not the place where the savings plan was administered." *Id.*, at 536.  The court explained that, even though the defendant administered the savings

20

plan in question in Boston, any actions it took had "a real and immediate impact wherever a plan participant was located." *Id.* The court had no doubt in its mind that, if the plaintiffs' allegations were true, the damage suffered by the plaintiffs occurred where they resided in the Southern District of Texas. The court noted that it possessed a "compelling interest" to ensure that individuals who were injured in its district receive prompt and fair compensation for their losses. *Id.* It therefore concluded that the interests of justice factor pointed in favor of retaining the case, rather than transferring it to Boston.

Similarly, in the present matter, even though the Plan is administered in Illinois, the decision denying plaintiffs' request for payment of additional benefits had a "real and immediate impact" upon the beneficiaries of Martin French's life insurance policy in the plaintiffs' respective locations, Louisiana and California. This Court has a strong interest in ensuring that Linda French, as a Louisiana resident allegedly injured in this district, receives fair and prompt compensation for her losses. As such, the interests of justice factor weighs against transferring this case to Illinois.

Since the Plan has conceded that this case is likely to be resolved solely on the administrative record, without the necessity of conducting discovery and calling witnesses, and plaintiffs apparently already have the entirety of that administrative record (as well as all other documents considered relevant by the Plan) in their possession here in Louisiana, there is not a sufficient justification for transferring this case from the plaintiffs' chosen forum, which is strongly favored in ERISA cases in particular.[20] In sum, because the

---

[20] At least one court has held that, "[b]ecause of the special weight ERISA accords a plaintiff's choice of forum, the court need not engage in a lengthy analysis to determine that transfer is not warranted." *International Painters and Allied Trades Industry Pension Fund v. Painting Co.*, 569 F.Supp.2d 113, 118 (D.D.C. 2008), quoting *Flynn v. Veazey Const. Corp.*, 310 F.Supp.2d 186, 193 (D.D.C. 2004)(citing various D.D.C. slip opinions).

majority of the public and private factors to be considered in the transfer analysis weigh in favor of retaining the case in this district, the Plan's alternative motion to transfer this case to the Northern District of Illinois should be denied.[21]

### **RECOMMENDATION**

For the above reasons, it is recommended that the Motion to Dismiss, or Alternatively, to Transfer this Action to the United States District Court for the Northern District of Illinois (R. Doc. 4) filed by defendant, Dade Behring Life Insurance Plan, should be **DENIED**.

Signed in chambers in Baton Rouge, Louisiana, March 23, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[21] As noted above, to prevail on a motion to transfer, the moving party must show that the balance of convenience and justice weighs heavily in favor of the transfer, and in assessing a motion to transfer, the court must determine if a transfer would make it "substantially more convenient for the parties to litigate the case." *Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co.*, 844 F.Supp. 1163, 1165 (S.D.Tex. 1994). The plaintiff's choice of forum should only be disturbed upon a "clear showing of facts that establish either oppressiveness or vexatiousness towards a defendant as to be out of proportion to a plaintiff['s] convenience . . . or [that] make a trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." *Federal Trade Comm'n v. Multinet Mktg., LLC,* 959 F.Supp. 394, 396 (N.D.Tex. 1997). The Plan has not come forward with sufficient arguments and evidence meeting those standards so as to warrant transfer.

*See also, Southwest Airlines*, at *5 (denying transfer where the defendant did not produce any evidence regarding the cost or inconvenience of transferring documents and did not argue that it would be unable to obtain the testimony of any nonparty witnesses if the case was tried in Texas. Even when the increased convenience of the defendant's party and nonparty witnesses was considered, the court was unable to find, by a preponderance of the evidence, that it would be more convenient for the parties and witnesses to litigate the case in the Northern District of Illinois. The case was one in which a transfer would "merely result in shifting the inconvenience of the forum from one party to the other, something [the] court may not do").